## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DAVID KING,

      Plaintiff,

    v.

RYAN HESELBACH,
DAVID ELLIFRITZ and
JAMIE FARRIS,

      Defendants.

Civil Action No. TDC-22-0197

## MEMORANDUM OPINION

Plaintiff David King, a state inmate at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has brought this civil rights action pursuant to 42 U.S.C. § 1983 against Sgt. Ryan Heselbach, Sgt. David Ellifritz, and Hearing Office Jamie Farris arising out of a November 2019 incident when Heselbach and Ellifritz found a weapon in his cell at NBCI and Farris imposed the sanction of disciplinary segregation against him after a hearing. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Also pending is King's Motion for Admission or in the Alternative for Summary Judgment, which the Court construes as a Cross Motion for Summary Judgment. Both Motions are fully briefed. King has also filed a "Motion to Stay Plaintiff(s) Request for Video Cameras Recording" in which he requests that the disciplinary proceeding be reopened. ECF No. 24. Having reviewed the pleadings and the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion will be GRANTED, and King's Motions will be DENIED.

## BACKGROUND

### I.     The Cell Search

On November 28, 2019, while King was an inmate at NBCI, his cellmate went to the shower while King was standing inside the cell, at the cell door, observing the hallway. The cellmate then refused to return to the cell and was moved into segregation. Heselbach and Ellifritz, who were correctional officers at NBCI, went to King's cell to collect the cellmate's property. When the officers arrived, they noticed a bag just outside of the cell door. When Ellifritz picked up the bag, he saw that it contained a broken fan motor. He placed the bag back in front of the cell door, just out of King's sight. When the officers asked King to whom the bag belonged, he responded that he did not know and stated that it was not there when the doors opened for showers. King was directed to identify and place his cellmate's property onto a property cart. After King finished loading the cart, Heselbach asked King, and King confirmed, that all of the cellmate's property was in the cart. The cart was then removed from the cell.

Because of the bag found outside the cell door that likely contained contraband, Heselbach and Ellifritz then decided to search the cell. King was removed from the cell and handcuffed while Heselbach and Ellifritz conducted the search. During the search, Heselbach found a round metal shaft, sharpened to a point, in a shoe under the bottom bunk, that appeared to be made from metal similar to the material of the fan motor. According to King, the weapon was actually found in the bag outside of the cell, and the officers falsely reported the weapon was found inside the cell during the search.

### II.     The Disciplinary Proceeding

Neither King nor his cellmate admitted to possession of either the weapon or the bag, and each was issued a Notice of Inmate Rule Violation ("Notice"). On November 28, 2019, King was

2

served with a Notice charging him with violating Rule 105, which prohibits the possession, use, or manufacture of a weapon. The Notice informed King that he would have a disciplinary hearing, and it provided him with the opportunity to list a representative to participate in the hearing, witnesses he wanted to have called at the hearing, and evidence that he wanted to present at the hearing. King did not request a representative or witnesses, but he requested that the surveillance video from the time of the incident, as well as the bag found outside his cell, be made available for use as evidence at the hearing.

On December 12, 2019, King's disciplinary hearing was held before Hearing Officer Farris. Neither Heselbach nor Ellifritz participated in the disciplinary hearing, and neither was responsible for producing the evidence at the hearing. Farris noted that King had not requested a representative or witnesses, but that the requested surveillance video was available and would be considered. Heselbach's report on the incident was read into the record. In response, King asserted that the bag, which according to the report was originally outside the cell, was brought into the cell by one of the officers. King also maintained that he never went outside of the cell, and that he never bent over and put anything outside of the cell, and that the requested surveillance video would establish those facts. Farris confirmed that he had reviewed the surveillance video but concluded that the footage was not clear enough to see what the officers picked up in front of his cell or to determine if anyone placed anything in front of the cell. The prison's representative noted that King was charged with a weapon found inside of the cell, under the bunk and inside a shoe, not outside of the cell.

At the conclusion of the hearing, Farris found King guilty of the rule violation based on the following analysis:

> I find the report to be credible and reliable. The defendant stated that because the cameras could not show inside of the cell he could not give a defense against the

3

weapons being found in there. The defendant stated that it was found outside of the cell and that the officer picked it up from outside the cell. The officer reported that it was found inside the cell hidden in a shoe under the bunk. I find that the defendant had access to the weapon. Upon further review of the defendant's rule violation history, the defendant has had several guilty findings for weapon rule violation[s]. As where the defendant's cell buddy had none whatsoever. With that being said I find it more likely th[a]n not that the weapon found was in fact the defendant's weapons. Therefore I find the defendant Guilty of [R]ule 105.

Hrg. Record at 4, Defs.' Mot. Ex. 1 at 14, ECF No. 13-2. In reaching this conclusion, Farris considered a photograph of the weapon and shoe in which it was found and the surveillance video of the tier activity at the time of the cell search, including from when correctional staff took the property cart to King's cell to the time that King was escorted from the cell. He also reviewed the disciplinary histories of King and his cellmate. According to Farris, there was no reason to examine the bag King requested as evidence because King was charged only with the weapon found inside the cell and was not charged with anything related to the bag or its contents. As punishment, King received 120 days of disciplinary segregation. No good conduct credits were revoked.

Meanwhile, King's cellmate was charged with the same offense and also a charge for violating Rule 316 by disobeying an order to return to his cell. The cellmate later pleaded guilty to the Rule 316 charge, but the Rule 105 charge was dismissed in light of the guilty finding entered against King.

On December 13, 2019, King filed an appeal of Farris's decision on the grounds that the decision was "substandard" in part because the "Hearing Officer make claims that video footage wasn't clear enough to see what the Correctional Officer picked up" or to see "anyone placing anything out front the cell." Appeal at 1, Defs.' Mot. Ex. 1 at 23, ECF No. 13-2. Farris's decision was affirmed by the Warden of NBCI and the Inmate Grievance Office. On December 19, 2019, King filed an Administrative Remedy Procedure complaint ("ARP") in which he objected to the

4

conduct of the disciplinary hearing and the ruling on similar grounds, including complaining about Farris's assertion that the video footage was not clear enough. The ARP was dismissed because inmates may not use the ARP process to file complaints about disciplinary proceeding procedures and decisions.

In his Complaint in the present action, King alleges that (1) Defendants' actions in searching his cell and falsely claiming that he had a weapon constituted unlawful retaliation in violation of the Fifth and Fourteenth Amendments to the United States Constitution; and (2) Defendants' acts or omissions in relation to the disciplinary hearing, including the failure to produce and consider surveillance video evidence and physical evidence, the reliance on unfounded statements in a report, and the reliance on insufficient evidence, violated his right to due process of law under the Fifth and Fourteenth Amendments. King asserts his claims against Defendants in both their official and individual capacities and seeks compensatory and punitive damages, a declaratory judgment, and expungement of the disciplinary sanctions against him.

## DISCUSSION

In their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56. Defendants' arguments include that: (1) they are entitled to Eleventh Amendment immunity on the claims asserted against them in their official capacities; (2) King failed to exhaust available administrative remedies on his claims against Heselbach and Ellifritz; (3) King failed to properly allege or establish a due process claim relating to the disciplinary proceeding; (4) King failed to allege or properly establish a retaliation claim; and (5) King is not entitled to injunctive relief.

5

In his Motion for Request for Admission or in the Alternative for Summary Judgment, King effectively seeks summary judgment in his favor, so his Motion will be construed as a Cross Motion for Summary Judgment. To the extent that in that and a subsequent filing, King has arguably asserted new claims relating to his lost property or additional acts of alleged retaliation, those claims are not properly before the Court and will not be considered, because briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims. *See Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd,* 141 F.3d 1162 (4th Cir. 1998); *Mylan Laboratories, Inc. v. Akzo, N. V.,* 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd,* 2 F.3d 56 (4th Cir. 1993). The Court therefore limits its analysis to the claims asserted in the Complaint.

## I.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Here, Defendants have submitted exhibits with their Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any documents

6

attached to that pleading. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. As to the second requirement, the nonmoving party can show that a reasonable opportunity for discovery has not been afforded by filing an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Here, King, who filed a memorandum in opposition to the Motion, has not argued that discovery is necessary before summary judgment may be considered and instead argues that summary judgment should be granted in his favor. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment for purposes of the arguments requiring consideration of the attached exhibits.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light

most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in

the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*,

346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit

under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine"

only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a

verdict for that party. *Id.* at 248-49.

"When faced with cross-motions for summary judgment, the court must review each

motion separately on its own merits 'to determine whether either of the parties deserves judgment

as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip

Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## II.     Official Capacity Claims

Defendants assert that they are immune from the claims against them in their official

capacities based on the Eleventh Amendment to the Constitution, which provides that "[t]he

Judicial power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In effect, the Eleventh

Amendment bars suits for damages against a state in federal court unless the state has waived

sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp.

v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit

in which the State or one of its agencies or departments is named as the defendant is proscribed by

the Eleventh Amendment."). "[A] suit against a state official in his or her official capacity is . . .

a suit against the official's office" and thus is the equivalent of "a suit against the State itself."
*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Although Maryland has waived its sovereign immunity for certain types of cases brought
in state courts, *see* Md. Code Ann., State Gov't § 12-201(a) (LexisNexis 2021), it has not waived
its immunity under the Eleventh Amendment to a suit of this kind in federal court. Accordingly,
Eleventh Amendment immunity applies to the official capacity claims, and those claims will be
dismissed.

### III.   Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that King has failed to exhaust his administrative
remedies as to the retaliation claims against Heselbach and Ellifritz based on the cell search and
the allegedly false claim that he possessed a weapon. Under the Prison Litigation Reform Act of
1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42
U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a) (2018). Inmates must exhaust administrative remedies before they bring any
"suits about prison life, whether they involve general circumstances or particular episodes, and
whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532
(2002).

Exhaustion is mandatory and generally may not be excused unless the administrative
procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that "[a]n inmate
must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative
remedy is not considered to have been available if a prisoner, through no fault of his own, was

9

prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," the procedure is "so opaque that it becomes, practically speaking, incapable of use," or "prison administrators thwart inmates from taking advantage of [filing grievances] through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

In Maryland prisons, for the type of grievance asserted by King, the Administrative Remedy Procedure is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1) (2022). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. *Id.* § 12.02.28.05(D)(1) (requiring filing with the "managing official"); *id.* § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); *id.* § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *Id.* § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210 (LexisNexis 2017); Md. Code Regs. § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. *See* Md. Code Ann., Corr. Servs. § 10-210(a).

Here, the record reflects that while King filed an ARP asserting complaints about Farris's handling of the disciplinary proceeding, he did not allege in either that ARP or any other ARP claims that Heselbach or Ellifritz engaged in retaliation by searching his cell and reporting the finding of a weapon. Although he filed an ARP against Ellifritz relating to Ellifritz's alleged confiscation of King's sweatpants on the day of the cell search, that ARP was limited to that issue

10

and did not reference the alleged retaliation. King states, without support, that his failure to exhaust administrative remedies should be excused because the administrative remedy process was not available to him, but he provides no support for this claim other than a copy of an ARP filed in August 2019, months before the events in question, which he asserts was delayed by other correctional officers who also attempted to convince him to withdraw the ARP. In that instance, however, King was able to submit the ARP and have it processed. More importantly, King has demonstrated that he had the ability to use the administrative process when he submitted his ARP relating to the confiscation of his sweatpants on November 29, 2019 and his separate ARP on December 19, 2019 relating to the failure to consider video and physical evidence at his disciplinary proceeding. King also demonstrated his ability to use the ARP process when he filed two other ARPs on unrelated matters, from November 2019 to January 2020. Accordingly, King's claims asserted against Heselbach and Ellifritz will be dismissed for failure to exhaust administrative remedies.

## IV.    Due Process

Both sides seek summary judgment in their favor on the due process claim relating to the disciplinary proceeding. Prisoners retain rights under the Due Process Clause of the Fourteenth Amendment, but prison disciplinary proceedings are not part of a criminal prosecution, so the full array of rights due to a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In prison disciplinary proceedings that implicate a possible loss of diminution credits, a prisoner is entitled to certain due process protections which include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing at which the inmate is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional

safety and correctional concerns; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See id.* at 564-571. There is no constitutional right to confront and cross-examine witnesses or to retain counsel or have counsel appointed. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004).

As a matter of procedural due process, inmates have a "qualified right to obtain and present video evidence surveillance," unless the "government establishes that providing the inmate with access to such evidence would be unduly hazardous to institutional safety or correctional goals." *Lennear v. Wilson*, 937 F.3d 257, 262, 270 (4th Cir. 2019). Requests for video or other evidence are to be considered on an "individualized basis," and a hearing officer may decline to provide access to or consider certain evidence if that officer makes a determination that it is not relevant or otherwise offers a cognizable justification for doing so. *Id.* at 270-72.

On a due process challenge, courts do not review the merits of a hearing officer's decision anew. Rather, the result of a disciplinary proceeding satisfies due process if the procedural requirements are satisfied and if the decision was based upon "some evidence" from which the hearing officer's conclusion "could be deduced." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *Tyler v. Hooks*, 945 F.3d 159, 171 (4th Cir. 2019) (stating that "the 'some evidence' standard is extremely broad in scope and presents a very low burden for prison officials to meet.")

Here, King was not sanctioned with the loss of good conduct credits, and because he has not demonstrated that the conditions of disciplinary segregation presented an atypical and significant hardship in relation to the ordinary incidents of prison life, he had no protected liberty interest impacted by the conduct of the disciplinary hearing. *See Beverati v. Smith*, 120 F.3d 500,

504 (4th Cir. 1997) (finding that a prisoner placed in administrative segregation following an alleged rule violation had no protected liberty interest in avoiding such confinement). The due process claim thus necessarily fails.

Even if King had such a liberty interest, the record demonstrates that he received the required protections set forth in *Wolff*. King received advanced written notice of, and a statement of, the charges against him. He had a disciplinary hearing before an impartial decisionmaker at which he had an opportunity to be heard. He was informed of his rights to have a representative, witnesses, and evidence at the hearing, but he declined to have a representative or to call witnesses. Although King now claims that Farris did not review the surveillance video, he acknowledged in his appeal and ARP that Farris had done so. Rather, he disagreed with Farris's conclusion that the video was not clear enough to see whether anyone placed the bag in the hallway. The record is therefore clear that, as attested to by Farris in his declaration, the surveillance video was reviewed and considered. As for the bag found outside King's cell, although it appears that it was not produced for the hearing, as noted by Farris, it was not relevant because there was no claim that King was responsible for its contents. To the extent that the metal weapon may have been made from materials contained in the bag, that fact would have been entirely consistent with the officers' conclusion that the weapon, regardless of who made it, had been obtained by and was possessed by King. Finally, after the ruling, King received a written copy of the hearing officer's decision. *See Wolff*, 418 U.S. at 556.

King also argues that the evidence was insufficient to support the finding of guilt. Beyond his objection to Farris's finding that the surveillance video was inconclusive, King now offers declarations from two witnesses, inmates Thomas Hungerford and Matthew Moore. Hungerford and Moore each state that on the date of the incident, they saw correctional officers pick up a

13

plastic bag that was in front of King's cell, handcuff an inmate and placed him outside the cell, then take the plastic bag into the cell. King maintains that the surveillance video would show these same movements.

The Court, however, is not tasked with considering new evidence or assessing the correctness of Farris's ruling. As discussed above, Farris reviewed the surveillance video, and it is undisputed that King was aware of his right to request witnesses but that he did not identify Hungerford and Moore, or anyone else, as witnesses to be called at his disciplinary hearing. Under the relevant standard of whether Farris based his finding of guilt on "some evidence," the record is clear that Farris did so by relying on Heselbach's report, which stated that the weapon was found in King's cell, and the photograph of the weapon, after considering both the surveillance video and King's version of the events. *See Hill*, 472 U.S. at 455. Thus, the Court finds that King has not provided a basis to conclude that his due process rights were violated during the disciplinary proceedings and will grant summary judgment to Defendants on this claim.

## V.   Retaliation

Finally, although already subject to dismissal for failure to exhaust administrative remedies, the Court finds that King has not provided sufficient facts to support a retaliation claim against Heselbach and Ellifritz. King contends, without specific factual support, that Heselbach and Ellifritz searched his cell and planted a weapon because his cellmate refused to return to his cell.

In order to prevail on a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). In the prison context, a retaliation claim is most typically asserted in relation to the exercise of First Amendment right to

14

file grievances. *See e.g. Martin v. Duffy*, 858 F. 3d 239, 249-50 (4th Cir. 2017) (holding that inmate had sufficiently alleged retaliation when he was placed in segregation after filing a grievance, which constituted protected First Amendment activity).

Here, although King references the Fifth and Fourteenth Amendments, he has identified no constitutionally protected right that he was exercising prior to the cell search that could have been the basis for a retaliation claim. The refusal to return to the cell was asserted by his cellmate, not him. As described, that conduct could not reasonably be construed as an activity protected by the First Amendment, and even if it could, King took no action to support it in any way. He also does not explain how or why his cellmate's refusal to return to his cell motivated Heselbach or Ellifritz, neither of whom was the correctional officer who issued the Notice of Inmate Rule Violation to the cellmate for that refusal, to act in a retaliatory manner towards him. By his own account, he took no action to object to or oppose the officer's efforts to collect his cellmate's property or to search the cell. He therefore has not alleged, must less provided facts sufficient to establish, any constitutionally protected activity that could support a viable retaliation claim. *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996) (affirming the dismissal of a prisoner's retaliation claim where the claim failed to demonstrate that the allegedly retaliatory acts were punishment for the exercise of a constitutional right). The retaliation claim will therefore be dismissed on the merits as well.

As the Court will grant Defendants' Motion as to all claims, it need not address whether King may seek injunctive relief on those claims. Because the Court will grant summary judgment to Defendants, King's Motions necessarily fail.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, will be GRANTED.  King's Motion for Admission or in the Alternative for Summary Judgment and King's Motion to Stay will be DENIED.  A separate Order shall issue.


Date:   March 24, 2023

THEODORE D. CHUANG
United States District Judge